VL-515

## STATE OF HAWAII
### DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
Employment Security Appeals Referees' Office
830 Punchbowl Street, Room 429
Honolulu, Hawaii 96813

| | |
|---|---|
| In the Matter of the Claim of: | Decision: 0102799 |
| Linda D. Sekiya<br>1517 Makiki Street, Apt. 1201<br>Honolulu, HI 96822-4522 | Date Appeal Filed: November 15, 2001<br><br>Section of Hawaii Employment<br>Security Law: 383-30(1) |
| Claimant-Appellant<br>SSA No. 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 | Time and Place of Hearing:<br>08:00 a.m., December 12, 2001<br>Honolulu, Hawaii (Telephone Hearing) |
| US Defense Logistics Agency<br>HROC ATTN: Benefits<br>P.O. Box 182662<br>Columbus, OH 43218-2662 | Parties Present:<br>Claimant |
| Employer | |

The claimant appealed from a determination of the Department of Labor and Industrial Relations which disqualified the claimant for unemployment benefits beginning September 30, 2001, and continuing until the claimant is paid wages in covered employment equal to not less than five (5) times the claimant's weekly benefit amount after October 06, 2001, on the basis that the claimant left employment without good cause.

STATEMENT OF FACTS:

Employer and claimant were notified of the hearing date, time, and place but only claimant appeared to provide sworn testimony.

Claimant last worked for a federal government agency from June 01, 1975 to October 01, 2001. She retired voluntarily as a result of incidents that she felt were retaliatory because she complained. In June 2001, she submitted an application to attend a pre-retirement seminar on July 30, 2001. On July 26, 2001, her supervisor said she was ineligible. She learned three (3) of her co-workers who were near retirement were also denied. She further learned that some of those attending had just begun their careers with the federal government. The government provides for mid-career and regular pre-retirement seminars open to employees. Claimant did not intend to retire for another three (3) years but the last one she attended was five (5) years

EXHIBIT Y

000991

before and she wanted to know of any changes so she could begin planning for her retirement. She, therefore, asked her supervisor "Who is eligible?" He said he would check but never gave her a response. She asked her supervisor to provide her with a written response. He returned to tell her that his superior said to put her request in writing. On July 27, claimant made a written request. As of the hearing on December 12, 2001, claimant has not received a response. What claimant received on August 22, 2001, was a "Letter of Requirement" advising claimant that her use of her vacation and sick leaves were excessive and possibly abusive. The letter contained a list of do's and don'ts regarding her requests for leave.

Claimant had used most of her leave time since 1998 because her father was very ill with cancer and she was the only person available in Hawaii to look after his health, her mother, and legal matters. Claimant herself had a multitude of personal illnesses and disabilities all of which were known to her supervisor. She always submitted physician's statements. Her father passed away in March 2001. Her use of leave time in 2001 was less than in prior years. Her supervisor approved all of her leave requests and had never told her that she was abusing her leave. Claimant, therefore, concluded that the letter was a retaliatory action because she had made the denial of her request to attend the pre-retirement seminar an issue.

Claimant had a total of 34 years of government service. She has been disabled for the past two (2) years and uses a crutch to walk. Her physician advised claimant that she should retire to avoid further stress. To avoid stress and any further retaliatory action, claimant decided to file for her retirement, which she did on August 31, 2001.

REASONS FOR DECISION:

Section 383-30(1) of the Hawaii Employment Security Law provides that an individual shall be disqualified for benefits for any week prior to October 01, 1989, in which the individual has left work voluntarily without good cause, and continuing until the individual has, subsequent to the week in which the voluntary separation occurred, been employed for at least five (5) consecutive weeks of employment. For the purpose of this paragraph, "weeks of employment" means all those weeks within each of which the individual has performed services in, employment for not less than two (2) days or four (4) hours per week, for one (1) or more employers, whether or not such employers are subject to this chapter. For any week beginning on and after October 01, 1989, in which the individual has left the individual's work voluntarily without good cause, and continuing until the individual has, subsequent to the week in which the voluntary separation occurred, been paid wages in covered employment equal to not less than five (5) times the individual's weekly benefit amount as determined under Section 383-22(b). An owner-employee of a corporation who brings about the owner-employee's unemployment by divesting ownership, leasing the business interest, terminating the business, or by other similar actions where the owner-employee is the party initiating termination of the employment relationship, has voluntarily left employment.

Section 12-5-47, Administrative Rules. (A) An individual shall be disqualified for benefits for voluntarily leaving work without good cause.

(B) A separation is a voluntary leaving or quitting when the facts and circumstances demonstrate that a claimant is the "moving party" in the termination of an employment relationship.

(C) Generally, a leaving of work is considered to be for good cause where it is for a real, substantial, or compelling reason, or a reason which would cause a reasonable and prudent worker, genuinely and sincerely desirous of maintaining employment, to take similar action. Such a worker is expected to try reasonable alternatives before terminating the employment relationship. Good cause for leaving employment may be found where there is:

   (1) Change in working conditions and the change is prejudicial or detrimental to the health, safety, or morals of the claimant;
   (2) Change in terms and conditions of employment including but not limited to: change in rate of pay, position or grade, duties, days of work, or hours of work;
   (3) Discrimination which violates federal or state laws regarding equal employment opportunity practices;
   (4) Change in employee's marital or domestic status;
   (5) Acceptance of a definite, firm offer made of other employment where the offer is subsequently withdrawn and the former employer refuses to rehire the employee;
   (6) Retirement under a mandatory requirement imposed by a collective bargaining agreement; or
   (7) Any other factor relevant to a determination of good cause.

(D) An owner-employee of a corporation who brings about the owner-employee's unemployment by divesting ownership, leasing the business interest, terminating the business or by other similar actions where the person is the "moving party" in terminating the employment relationship, voluntarily leaves employment. Benefits may be payable to such individuals upon showing of good cause. As used in this subsection:

   (1) An "owner-employee" means a person who is a shareholder, and director or officer, or both, who exercises a substantial degree of control over the direction of corporate activities, including the decision to dissolve the corporation; and

   (2) "Good cause" includes but is not limited to financial difficulties such as bankruptcy proceedings, or long-term or considerable financial loss.

The relevant issue in this case is whether the claimant's voluntary leaving was for good cause.

000993

Claimant's conclusion that her supervisor was taking retaliation was her own conclusion but not a wholly unreasonable conclusion since, prior to her request for a written denial of her exclusion from the pre-retirement seminar, her supervisor had approved all leaves taken without any mention of abuse. Claimant's illnesses and disabilities and her responsibility for her mother would have continued if she continued working. The supervisor intimated that he was now considering all requests as being abusive in spite of the medical evidence and approvals claimant had obtained. The stress she was under was, therefore, compounded to the extent that her physician advised her to leave her job. Claimant's filing for her retirement was only incidental to the reason that caused her to leave the job. Claimant filed because she qualified for retirement from a job which had become detrimental to her health. Claimant quit with good cause.

DECISION:

The determination of the Department is reversed. The claimant left work voluntarily with good cause. The period of disqualification is removed. Benefits are payable provided the claimant is otherwise eligible.

*Judith Shamoto*

JUDITH SHAMOTO
Appeals Officer

Date Mailed: December 13, 2001
ymk

000992