NEGOTIATED AGREEMENT

BETWEEN

DEFENSE PROPERTY DISPOSAL OFFICE

AND

SERVICE EMPLOYEES INTERNATIONAL UNION

LOCAL 556, SFL-CIO

APPROVED BY DPDS ON 28 JULY 1981

EFFECTIVE

28 JULY 1981



EXHIBIT GG

001197

Table of Contents

| ARTICLE | | PAGE |
|---|---|---|
| | Preamble.................................................... | 1 |
| | Witnesseth................................................... | 1 |
| I | Exclusive Recognition and Coverage of Agreement......... | 1 |
| II | Duty to Bargain and Scope................................ | 2 |
| III | Employer's Rights........................................ | 2 |
| IV | Union's Rights........................................... | 3 |
| V | Employee's Rights........................................ | 4 |
| VI | Union Representation..................................... | 4 |
| VII | Hours of Work............................................ | 5 |
| VIII | Overtime................................................. | 6 |
| IX | Holidays................................................. | 6 |
| X | Annual Leave............................................. | 7 |
| XI | Sick Leave............................................... | 8 |
| XII | Leave for Maternity/Paternity Reasons.................... | 9 |
| XIII | Extended Leaves of Absence............................... | 9 |
| XIV | Excused Absence and Administrative Dismissal............. | 9 |
| XV | Promotions............................................... | 11 |
| XVI | Repromotion Eligibility.................................. | 12 |
| XVII | Temporary Assignments.................................... | 12 |
| XVIII | Reduction in Force....................................... | 13 |
| XIX | Disciplinary Actions..................................... | 13 |
| XX | Adverse Actions.......................................... | 14 |
| XXI | Grievance Procedure...................................... | 15 |
| XXII | Arbitration.............................................. | 19 |
| XXIII | Training................................................. | 20 |
| XXIV | Job Ratings and Classification........................... | 20 |
| XXV | Safety and Health........................................ | 21 |
| XXVI | Facilities and Services.................................. | 21 |
| XXVII | General Provisions....................................... | 22 |
| XXVIII | Duration of Agreement.................................... | 22 |

APPENDIX

| I | DPDO/SEIU Negotiated Procedure Grievance Form............ | 24 |

PREAMBLE

THIS AGREEMENT is by and between the Defense Property Disposal Office (DPDO) Hawaii; hereinafter referred to as the "Employer," and the Service Employees International Union Local 556, AFL-CIO; hereinafter referred to as the "Union."

WITNESSETH

WHEREAS, the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them, safeguards, the public interest, contributes to the effective conduct of public business, and facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and

WHEREAS, the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government;

NOW THEREFORE, the Parties hereto agree within the meaning of the Civil Service Reform Act of 1978, hereinafter referred to as the "Act", as follows:

ARTICLE I

EXCLUSIVE RECOGNITION AND COVERAGE OF AGREEMENT

Section 1.  The Employer recognizes the Union as the exclusive representative of the Unit identified in Section 2 and this AGREEMENT shall apply to all such employees and to their interests in matters of personnel policies and practices as well as other matters affecting their general working conditions.

Section 2.  The Unit to which this AGREEMENT is applicable is composed of all eligible employees of the Defense Property Disposal Office, Hawaii.

Section 3.  Excluded from the Unit to which this AGREEMENT is applicable are all management officials, supervisors, professionals, confidential employees, temporary employees, employees engaged in Federal Personnel work in other than a clerical capacity, and guards.

  e. to take whatever actions may be necessary to carry out the Employer's mission during emergencies.

  SECTION 2. Nothing in this AGREEMENT shall preclude the Employer and the Union from negotiating, at the election of the Employer, on the numbers, types, and grades of employees or positions assigned to any organization subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work.

  SECTION 3. Procedures which the Union may negotiate:

   a. Procedures which the Employer will observe in exercising any authority under this Article, and

   b. Appropriate arrangements for employees adversely affected by the exercise of any authority under Sections 1 or 2 of this Article by the Employer.

## ARTICLE IV

## UNION'S RIGHTS

  SECTION 1. The Union is the exclusive representative of the employees in the Unit and is entitled to act for and negotiate a collective bargaining agreement covering all employees in the Unit. The Union is responsible for representing the interests of all employees in the unit without discrimination and without regard to labor organization membership.

  SECTION 2. The Union shall be given the opportunity to be represented at:

   a. any formal discussion between one or more representatives of the Employer and one or more employees in the Unit or their representatives concerning any grievance or any personnel policy or practices or other general conditions of employment; or

   b. any examination of an employee in the Unit by a representative of the Employer in connection with an investigation if:

    (1) The employee reasonably believes that the examination may result in disciplinary action against the employee; and

    (2) the employee requests representation.

  SECTION 3. The Employer shall inform annually all employees in the Unit of their rights under Section 2(b) of this Article.

001200

SECTION 3. Union representatives who are not employees of DPDO and who desire admission to the activity, will make arrangements in advance through CCPO Pearl.

SECTION 4. The Employer agrees to permit stewards or alternate stewards to leave their assigned duties for the purpose of: Meeting and discussing labor-managment relations with appropriate management and/or civilian personnel officials; discussing work-related matters within the scope of this Agreement with employees; representing employees or the Union in formal discussions with management; presenting grievances to management; traveling to and from and attending any adverse action or arbitration hearings when serving as a representative for DPDO employee; and interviewing witnesses or reviewing documents. It is agreed that these Union representatives shall be permitted a reasonable amount of official time without charge to leave to carry out these responsibilities.

    a. A steward desiring administrative time under this Article will make the request to his immediate supervisor, informing him of the appropriate time he will be away from his work area.

    b. A steward who enters a work area will check with the supervisor in that work area before meeting with an employee during regular duty hours.

    c. The supervisor will allow the steward to leave his work area unless the steward's work requirements or work schedule prohibits his release.

SECTION 5. The Employer agrees that official time shall be granted employees who are representatives of the Union to attend Union-conducted training which is of mutual concern to the Activity and the employee in his capacity as a Union representative and the Activity's interest will be served by the employee's attendance. The amount of official time granted for this purpose shall be what the Employer considers to be necessary and reasonable. A schedule of the training and the subject matters to be covered will be submitted to the Employer at least ten (10) calendar days in advance along with the request for official time.

ARTICLE VII

HOURS OF WORK

SECTION 1. The normal schedule work week will consist of five (5) consecutive eight (8) hour days, Monday through Friday.

SECTION 2. The Employer may establish special tours of duty to enable employees to take educational courses at their expense. Such tours of duty will be in accordance with applicable regulations.

5

  a. For employees who are scheduled to work Monday through Friday, when a holiday falls on Saturday, the holiday will normally be on the preceding Friday; likewise, when a holiday falls on Sunday, it will normally be observed on the following Monday.

 SECTION 2. Employees shall be provided as much advance notice as practible of holiday work assignments.

  a. In the absence of qualified volunteers, assignments for holiday work will start with the person with the least seniority as determined by service computation date for that particular type of work needed. It is understood that the requirements of the work will be the paramount consideration.

 SECTION 3. Pay for holiday work shall be computed in accordance with applicable laws and regulations.

## ARTICLE X

## ANNUAL LEAVE

 SECTION 1. Employees will accrue annual leave in accordance with applicable regulations. The approval of annual leave will be governed by workload and manpower requirements. It is understood that the Employer may cancel or reschedule such leave when necessitated by bonafide work requirements.

 SECTION 2. The Employer agrees to grant annual leave in a manner which permits each employee, if he wishes, to take at least two (2) consecutive weeks of annual leave each year, if practicable.

  a. The Employer and the employees have a mutual responsibility to schedule annual leave to avoid forfeiture. Therefore, all excess annual leave shall be scheduled as soon as practicable to avoid the unintended loss of leave.

  b. In the event of a conflict of annual leave requests among employees, the employee with the earliest service computation date will be given preference, if all other considerations are relatively equal.

 SECTION 3. Once leave has been scheduled and approved, the Employer may approve a change in the selection of leave time provided another employee's scheduled choice is not affected.

 SECTION 4. The employee may be granted annual leave for a workday which occurs on a religious holiday.

001202

## ARTICLE XII

### LEAVE FOR MATERNITY/PATERNITY REASONS

SECTION 1.  A female employee may request and be granted sick leave, annual leave, and/or a reasonable amount of leave without pay for maternity reasons in accordance with regulations.  Any approved absence in excess of available annual and sick leave will be charged to leave without pay.  All sick leave in excess of three (3) consecutive workdays must be supported by a doctor's certificate.

SECTION 2.  A male employee who has provided the Employer with ninety (90) calendar days advance notice may, consistent with workload requirements, be absent on annual leave or leave without pay for up to thirty (30) consecutive days to aid or assist in the care of his wife or minor children in relation to his wife's confinement for maternity reasons.

## ARTICLE XIII

### EXTENDED LEAVES OF ABSENCE

SECTION 1.  Employees may be granted leaves of absence in accordance with applicable laws and regulations.  Such leaves of absence without pay shall not exceed a period of one (1) year for each application.

SECTION 2.  When given adequate advance notification in writing that an employee in the Unit has been elected or appointed to a union office or as a delegate to any union activity requiring a leave of absence, the Employer agrees that such employee shall be granted annual leave and/or leave without pay whenever possible consistent with regulations and workload requirements.

SECTION 3.  The Employer recognizes the bumping and retreat rights of an employee on leave of absence in situations  where the employee is affected by reduction-in-force action during his leave of absence.

SECTION 4.  Employees who are absent on extended leave without pay for periods up to one (1) year shall be entitled to all rights and privileges afforded by governing regulations.

## ARTICLE XIV

### EXCUSED ABSENCES AND ADMINISTRATIVE DISMISSAL

SECTION 1.  An excused absence is an absence from duty administratively authorized without loss of pay and without charge to leave.

001203

SECTION 7. Administrative dismissal is defined as the release of employees from performance of regular assigned duties without loss of pay or charge to leave. In accordance with appropriate regulations, employees covered by the Agreement shall be administratively excused from work for that time when normal operations are interrupted by events beyond the control of management or employees (such as extreme weather conditions, serious interruptions to public transportation services, or disasters such as fire, flood or other natural phenomena which necessitate the closing of the Activity, either whole or in part) which would prevent employee(s) from working or reporting for work or from being assigned to other duties by management. Employees may also be dismissed for managerial reasons included but not limited to, the breakdown of machines or of essential services of facilities, unanticipated delays in the flow of work or in the receipt of materials or power failure.

SECTION 8. When dismissed under the general circumstances listed in Section 7, above, employees shall be excused from duty without charge to leave or loss of pay or shall be required to use annual leave as follows:

    a. When dismissals are necessary or desired and neither 24-hour notice nor notice before the end of the preceding shift is possible, employees who cannot be assigned to other work will be excused for a period not to exceed two (2) consecutive workdays. When the circumstances continue to prevent employees from returning to work at the end of two (2) workdays, they may be excused for a period not to exceed three (3) additional workdays.

    b. When 24-hour advance notice can be given, employees will be assigned to other work or will be required to use annual leave.

    c. Where employees cannot be given 24-hour notice, but can be given notice before the end of their preceding work shift, such employees will be assigned to other work or will be required to use annual leave; provided, however, that such involuntary use of annual leave may not exceed five (5) workdays in any leave year.

ARTICLE XV

PROMOTIONS

SECTION 1. It is the policy of the Employer to utilize the skills and potential of all Unit employees so as to provide for their progressive development. The Employer and the Union agree that when a vacant position within the unit is to be filled through agency competitive procedures on a permanent basis, it will be filled under the merit promotion program with the objective of obtaining the best qualified person available.

11

ARTICLE XVIII

REDUCTION IN FORCE

SECTION 1. The Employer agrees that prior to the issuance of official notice to Unit employee in a reduction-in-force, the Union shall be notified of the number of employees and competitive levels to be affected, the date action is to be taken, and the reason(s) for the reduction-in-force.

SECTION 2. In order to minimize the impact of any reduction-in-force, the Employer will consider using existing vacancies to place qualified employees who might otherwise be affected by the reduction-in-force.

SECTION 3. Any career or career-conditional employee who is separated as a result of RIF shall be informed of priority placement programs available to him. He will, upon request, be registered in such program.

ARTICLE XIX

DISCIPLINARY ACTIONS

SECTION 1. Disciplinary actions shall be taken only for just cause, and the penalty imposed will be the minimum, in the judgement of the disciplining official, that can reasonably be expected to correct the affected employee and maintain discipline and morale among other employees. For the purpose of this Article, corrective measures range from a letter of reprimand to a suspension of fourteen (14) days or less. Suspensions shall only be taken for such cause as will promote the efficiency of the service.

SECTION 2. Prior to initiating disciplinary action against an employee, a preliminary investigation or inquiry shall be made by the immediate supervisor or other responsible official as is necessary to determine the facts in the case. If a formal disciplinary action appears to be warranted, a discussion will be held with the employee except where unusual circumstances make such discussion impractical. At the outset of the discussion, the supervisor shall advise the employee that the purpose of the meeting is to discuss a possible disciplinary action. The employee may have a Union representative present by request.

SECTION 3. When a decision is made to propose a suspension of fourteen (14) days or less, the affected employee is entitled to:

    a. An advance written notice stating the specific reasons for the proposed action;

    b. At least ten (10) calendar days to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer (an extension of time to reply may be granted upon a showing of adequate justification);

SECTION 3. If the Union is chosen as the employee's representative, the Union will, upon specific request and in accordance with applicable laws, be provided with copies of documents which are relevant to the disciplinary action being proposed.

SECTION 4. In the event the decision is made to effectuate the proposed, or less severe adverse action, the employee shall be informed of his right and time frame to appeal the decision to the Merit Systems Protection Board or through the negotiated grievance procedure, but not through both procedures.

SECTION 5. If the employee grieves the decision, his representative shall be allowed to review the material relied upon to support the reasons in the notice, provided he presents proof of representation.

## ARTICLE XXI

## GRIEVANCE PROCEDURE

SECTION 1. The Employer and the Union desire that all employees in the Unit continue to be treated fairly and equitably. This Article provides an orderly procedure for processing grievances of the Parties and unit employees as defined in Section 2 below. Except as provided in Section 10 below, it is the sole procedure that may be used by unit employees.

SECTION 2. A grievance is defined as any complaint:

    a. by a unit employee or the Union concerning any matter within the discretion of the Employer relating to the employment of the employee except those specifically excluded under this Article or by law;

    b. by a unit employee or the Parties concerning the effect or interpretation, or a claim or breach, of this Agreement; or any claimed violation, misinterpretation or misapplication of any law, rule or regulation affecting conditions of employment as provided for by the Act.

SECTION 3. Excluded from processing under this Article are the following:

    a. Matters excluded by Section 7121(c) of the Act which include:

        (1) Prohibited political activities.

        (2) retirement, life insurance, or health insurance.

        (3) suspension or removal for national security reasons.

        (4) any examination, certification, or appointment.

        (5) the classification of any position which does not result in the reduction in grade or pay of a unit employee.

001206

SECTION 6. The grievance procedure shall be as follows:

Step 1. An employee shall first take up his grievance orally with the appropriate supervisor, normally the immediate supervisor. The employee shall advise the supervisor that the discussion is the first step of a grievance and state the substance of the grievance and the corrective action desired. If the supervisor does not have the authority to grant redress, the supervisor will refer the employee to the appropriate management official. The supervisor may reject the grievance if it was not filed within the specified time limit or consists of matters not grievable under this Article. The supervisor, after conducting any desired investigation, will provide a decision to the grievant within ten (10) calendar days. The grievant may request that a Union Steward accompany him when presenting his grievance.

Step 2. The grievant, if he is dissatisfied with the decision at Step 1, must resubmit his grievance to the DPDO Director, on the grievance form in Appendix 1 and attach any additional statements desired concerning the grievance. The Director or his designated representative, following any desired investigation of the matter, will meet with the grievant and his representative, if any, to discuss the substance of the grievance within seven calendar days of submission of the grievance. Any necessary witnesses and management officials having direct responsibility in the matter and technical advisors from CCPO Pearl may attend the meeting. The grievant will be provided a written reply within seven (7) calendar days after the date of the meeting with a copy to the Union President.

Step 3. In the event the decision is unacceptable to the Union, the matter may be submitted to Arbitration in accordance with the provisions of Article XXII, Arbitration.

SECTION 7. At each step of this procedure an employee grievant shall be represented and accompanied by a Union-designated representative. As an exemption to this requirement, an employee or group of employees wishing to present a grievance under this procedure without the intervention of the Union may do so. Such a request for adjustment will be irrevocable and made in accordance with the procedures, time limits, and provisions of this Article except that the employee is not entitled to any representation at the various steps nor is he entitled to arbitration. The Employer may adjust such grievances so long as the adjustment is not inconsistent with the terms of this Agreement and a Union representative has been given the opportunity to be present during the grievance proceedings.

SECTION 8. Grievances of the Union or the Employer shall be processed as follows:

    a. The grievance shall be submitted in writing to the Commanding Officer or the President of the Union, as the case may be. The grievance shall specify the particular Articles and Sections of the Agreement alleged to have been

001207

SECTION 13. All appeals of disciplinary actions shall be submitted at Step 2.

SECTION 14. In the event of a disagreement over whether a grievance is subject to this grievance procedure, or is subject to arbitration under this Agreement, the Parties shall attempt to resolve the issue informally. If unresolved, the matter will be resolved in accordance with the procedure set forth in Section 6 of Article XXII, Arbitration.

SECTION 15. Nothing in this Agreement shall be so interpreted as to require the Union to represent an employee in processing his grievance or to continue to represent him, if the Union considers the grievance to be invalid or without merit.

SECTION 16. All time limits prescribed in this Article may be extended by mutual consent. Failure of the Employer to observe prescribed time limts shall automatically move the grievance to the next step of the grievance procedure not to exceed Step 2. Failure to the grievant, his representative, or the Union to observe time limits shall constitute withdrawal of the grievance.

## ARTICLE XXII

## ARBITRATION

SECTION 1. Arbitration may be invoked only by the Union or the Employer and shall extend only to matters which may be processed under Article XXI, Grievance Procedure. Arbitration will be binding on the parties, except that either Party may file an exception to the Arbitrator's award with the Federal Labor Relations Authority under regulations prescribed by the Authority.

SECTION 2. Within five (5) calendar days from the date either party receives the written request for arbitration, representatives of the parties shall meet to mutually select an arbitrator. If agreement cannot be reached within two (2) calendar days from the initial meeting, the parties shall then submit a joint request to the Federal Mediation and Conciliation service for a list of five (5) Oahu residents who are qualified arbitrators. Within five (5) calendar days following receipt of this list, the parties will meet in an attempt to select a mutually acceptable arbitrator from the list. If agreement cannot be reached, then the parties will alternately strike a name from the list. This process will be repeated and the name remaining will be the duly selected arbitrator.

SECTION 3. Following selection and receipt of acceptance from the arbitrator, the parties will prepare a joint letter submitting the matter in dispute. This letter shall present, in question form, the matter on which arbitration is sought; it shall also outline the rules governing arbitration and the fees

classification by appropriate local authorities. The review include discussion with the employee and with his supervisor to determine the employee's actual regular work assignments over a current period and comparison of such assignments with the applicable rating definitions or classification standards. The employee and the supervisor will be advised verbally of the results of the review. If the employee's complaint is not resolved, he may file a classification appeal in accordance with applicable regulations.

ARTICLE XXV

SAFETY AND HEALTH

SECTION 1. The Employer will continue to provide and maintain safe working conditions for all employees. The Union will cooperate to that end by encouraging employees to work in a safe manner and to report promptly any unsafe practices or conditions observed to the appropriate supervisor. The supervisor shall be responsible for the investigation of any hazardous conditions reported to him. Prompt and appropriate action will be initiated to correct conditions determined by the Employer to be unsafe or unhealthy.

SECTION 2. When an employee believes he is being requested to work under conditions which are unsafe or unhealthy beyond normal hazards inherent to the work operation in question, he shall bring this to the attention of his supervisor. If after discussing the matter with his supervisor the employee is not satisfied with the supervisor's evaluation of the safety of the work operation, he will be granted permission to discuss the matter with the Union. All of the protective safety equipment required by the Employer will be provided to employees at the expense of the Employer.

SECTION 3. The Employer will provide transportation for emergency medical assistance and treatment when an employee becomes injured on the job and such treatment is necessary.

SECTION 4. The Employer will consider assigning light duties to employees who have been temporarily incapacitated due to official duty related injuries provided vacant positions are available, assignment is not unsafe to the employee's health, and the work would be useful.

ARTICLE XXVI

FACILITIES AND SERVICES

SECTION 1. It is agreed that upon advance request by the Union, the Employer will provide space, as available, for meetings after hours. It is agreed that the Union will comply with all security and house-keeping rules in effect at that time and place.

001209

SECTION 2. Amendments to this Agreement may be negotiated by the mutual consent of both parties any time after it has been in effect for a period of six months. Request for such amendments by either party must be in writing and must include a summary of the amendments proposed and the reasons therefor. The parties shall meet within fourteen (14) calendar days after receipt of such request to discuss the request. If the parties agree to a reopening of the Agreement, they shall proceed to negotiate on the proposed amendments.

SECTION 3. This Agreement may be reopened for amendment upon the written request of either party made within thirty (30) calendar days after receipt by the requesting party of any change required by applicable law or any order, instruction or regulation of the OPM, Department of Defense, DPDS or other higher authority, which alters the discretionary authority of the Activity Head with regard to any item dealt with in this Agreement. The written request shall include a summary of the changes proposed and shall include reference upon which the request is based. The parties shall meet within fourteen (14) calendar days after receipt of such request to commence negotiations.

001210

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT on this  9th  day of  July  1981.

FOR THE SERVICE EMPLOYEES' INTERNATIONAL UNION, LOCAL 556, AFL-CIO

*(signature)*

LAURENCE R. AH NEE, SR.
President

*(signature)*

GREGORY ELLIOTT
Vice President
Chief Negotiator

FOR THE DEFENSE PROPERTY DISPOSAL OFFICE, HAWAII

*(signature)*

ARTHUR T. BUSWELL
Colonel, U.S. Army
Commanding Officer

*(signature)*

PETER PAPPALARDO
Labor Advisor
Chief Negotiator

001211

MEMORANDUM OF AGREEMENT FOR PAYROLL DEDUCTION OF UNION DUES BETWEEN THE DEFENSE PROPERTY DISPOSAL OFFICE-HAWAII (HEREIN REFERRED TO AS THE EMPLOYER) AND THE SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 556 (HEREINAFTER REFERRED TO AS THE UNION.)

The parties hereto agree as follows:

Section 1. The Employer agrees that effective as early as practicable after signing of this document, voluntary payroll deductions for the payment of union dues shall be made from the pay of all who request such dues deduction and who are bona fide members in good standing with SEIU, Local 556. Dues are defined as the regular periodic payments required from a member to maintain him in good standing with the Union. In implementing the dues deduction program, the Employer and the Union shall be governed by provisions of this Agreement, applicable laws, Office of Personnel Management regulations and Department of Defense/Navy directives. It is recognized that changes in the AGREEMENT may be required by future changes in such laws, regulations and directives of higher authority.

Section 2. Any employee of the Unit desiring to have his union dues deducted from his pay may, at any time, complete and sign the appropriate portions of Standard Form No. 1187 (Rev. Jan 79) "Request for Payroll Deductions for Labor Organization Dues".

Section A of this form shall be completed and certified by the President of the Union or his designee, who shall mail/deliver it to the Employer's Personnel Office (Consolidated Civilian Personnel Office, Pearl Harbor), within sufficient time for verification of employee eligibility and for the subsequent processing of the form at the payroll office (NSC PEARL) no later than 12:00 noon on the last Monday preceeding the pay period during which the initial deduction is to be made. An employee may not request the deduction from his earnings of dues to more than one employee organization.

Section 3. A deduction will be made each biweekly pay period from the pay of employees in the Unit who have requested such allotment for dues. The amount to be deducted will be computed by multiplying the employee's regular monthly dues by twelve and dividing the results by twenty-six and rounding to the next higher penny. It is understood that no deduction for dues will be made by the Employer in any period for which the employee's net earnings after other deductions are insufficient to cover the full amount of the allotment for dues.

Section 4. The total dues deductions shall be transmitted by the disbursing office to the President, SEIU, Local 556, or his designee, by checking no later than ten (10) working days after the close of each pay period. With each check the payroll office will provide the Union with a list showing the names of the employees involved and the amount deducted for each employee. In the event an employee's net earnings

be responsible for giving the Employer prompt written notification of any changes in this information and informing the Union members of this change. Changes in the amount of employee organization dues for payroll deduction purposes shall not be made more frequently than once each twelve months.

IN WITNESS WHEREOF the parties hereto have executed this Agreement on this ___25___ day of _October 1979_

FOR THE UNION:

_[signature]_

FOR THE EMPLOYER:

_[signature]_

3

001213