EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

THOMAS A. HELPER  5676
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850-6100
Telephone:  (808) 541-2850
Facsimile: (808) 541-3752
E-mail:tom.helper@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LINDA D. SEKIYA, | ) | CIVIL NO. 04-00297 DAE KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DONALD H. RUMSFELD, | ) | |
| Secretary, Department of | ) | |
| Defense, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
DONALD H. RUMSFELD'S MOTION TO DISMISS, FOR SUMMARY
JUDGMENT AND IN THE ALTERNATIVE TO STRIKE JURY
DEMAND ON PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIM

EXHIBIT "H"

CERTIFICATION OF WORD COUNT

CERTIFICATE OF SERVICE

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
DONALD H. RUMSFELD'S MOTION TO DISMISS, FOR SUMMARY
JUDGMENT AND IN THE ALTERNATIVE TO STRIKE JURY DEMAND ON
<u>PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIM</u>

PRELIMINARY STATEMENT

In its opening brief, defendant showed that plaintiff's

claims of disability discrimination are untimely because of her

failure to contact an EEO counselor within 45 days of the alleged

discriminatory conduct; that plaintiff fails to state a <u>prima</u>

<u>facie</u> case of discrimination because she is not disabled and

because defendant did not take any adverse personnel action

against her; and that plaintiff's allegation that she was

constructively discharged is barred because the actions which she

alleges to be disability harassment are either appropriate

management actions to investigate her use of sick leave or far

fall short of the extreme actions required to show a hostile work

environment.  On plaintiff's Family and Medical Leave Act (FMLA)

claim, defendant showed that plaintiff's claim is barred because

she cannot show that she was harmed in any way by her employer's

actions on her leave, since the employer approved every request

for leave she ever made, including over a hundred hours of leave

without pay.

Plaintiff's response appears to be an attempt to make up,

with sheer quantity, for what she lacks in probative evidence and

legal merit.  Most of the information in her 41 exhibits is

entirely irrelevant, such as the records from her dentist,

opthamologist and dermatologist, or her scribbled notes on a variety of topics, or the documents pertaining to claims raised in the administrative process but not in her complaint in this court (e.g. age discrimination and retaliation).[1]

After the court discards the obviously irrelevant, the little that remains fails to create any issue of material fact. On the timeliness issue, plaintiff demonstrates grounds for equitable tolling of the 45-day limitations period for those claims raised to Congressman Abercrombie during that period, but not for claims omitted from the Abercrombie letter, such as the constructive discharge claim. On the disability issue, plaintiff does not dispute that the only information she gave to her employer in response to repeated requests showed that she had no substantial restrictions of any sort. The more extensive medical information now submitted to this court only confirms the lack of limitations. Notably absent from plaintiff's submission is any evidence from her treating physicians (either in sworn declaration or in medical notes) to show a substantial limitation of a major life activity. As to defendant's demonstration that asking her to justify her sick leave was not only not an adverse personnel action, but was specifically permitted by both the

---

[1]  Thus plaintiff's submission is a clear violation of Local Rule 56.1(c), which requires a party to "reference only the material facts which are absolutely necessary for the court to determine the limited issues presented in the motion for summary judgment (and no others)."

Family and Medical Leave Act and the governing collective bargaining agreement (not to mention common sense), plaintiff simply asserts that the collective bargaining agreement does not provide for such a request, and submits a copy of the agreement that omits the relevant page. The applicable page is attached hereto. As to the constructive discharge claim, plaintiff fails to produce evidence to show that a reasonable person would have found her supervisor's alleged comments about her leg injury, which she characterizes as "sarcastic", to be so extreme and intimidating as to require her to retire, or that she in fact retired because of the comments. Finally, as to the FMLA claim, plaintiff merely alleges that defendant would not have inquired into her leave usage if she had taken FMLA leave instead of sick or annual leave. This is simply not harm, since the FMLA explicitly allows such an inquiry.

Accordingly, the court should dismiss plaintiff's constructive discharge claim, and grant summary judgment on all of plaintiff's claims.

ARGUMENT

I.  <u>PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM IS UNTIMELY</u>.

In its opening brief, defendant demonstrated that because plaintiff did not contact an EEO counselor until November 26, 2003, her claims, which arose on October 1, 2003 at the latest, were untimely under the 45-day limitations period of 29 C.F.R.

-3-

1614.105(a)(1).  In response, plaintiff concedes the dates, but argues that the time limits should be equitably tolled because she was unaware of her EEO rights, so that instead of contacting an EEO counselor, she complained to Congressman Abercrombie and four others in a letter dated September 25, 2002 (Pl. Ex. U).

Although plaintiff's claim that she was entirely unaware of virtually anything to do with EEO will be shown to be unfounded to say the least, plaintiff has raised a genuine issue of fact on the equitable tolling issue, but only as to those claims that she raised to Congressman Abercrombie.  For claims that she did not raise in her Congressional complaint, however, equitable tolling is inappropriate.  In its Opening Brief at 5-6, defendant established that plaintiff's initial complaint must put defendant on notice of the legal theory being asserted and the operative facts.

Here, even if the court was to liberally view plaintiff's letter to Congressman Abercrombie as a substitute for contact with an EEO counselor, plaintiff's failure to even mention harassment bars her from raising those claims here.  Plaintiff's letter identified two problems: first, that she "was denied the right to attend a preretirement seminar"; and second, that she was undergoing stress because of health problems, her father's death, poor working conditions common to all employees in the workplace, and the requirement that she justify her future sick

-4-

leave.  Although the letter was written between her August 25,
2001 announcement that she would retire and her October 1, 2001
retirement date, she did not even mention her retirement, or the
alleged disability harassment from her supervisor Mr. Ching, much
less claim that she was retiring because of harassment.  Pl. Ex.
U.  Plaintiff's failure to raise the harassment or constructive
discharge issue is further demonstrated by the fact that agency
did not investigate any such claim.  Def. Ex. G.

Because plaintiff failed to raise her contention that she
was constructively discharged within 45 days of her retirement,
and has failed to demonstrate that equitable tolling is
appropriate, the court should dismiss that claim.

II.  <u>PLAINTIFF WAS NOT DISABLED</u>.

A.  In Determining Whether Plaintiff Was
Disabled, The Court Should Consider Only the
Evidence She Provided to Her Employer Before
<u>Her Retirement.</u>

In its opening brief, defendant demonstrated that plaintiff
was not disabled because she was not substantially limited in any
major life activity.  Plaintiff contends, however, that she was
substantially limited in the major life activities of walking and
working.  Pl. Memo at 21.

As a preliminary matter, the court must determine what
evidence it should consider in deciding whether plaintiff was
disabled.  There are at least three possible categories: (1) the
few documents that plaintiff provided to her employer in response

-5-

to the employer's repeated requests for explanation of her
medical condition;[2] (2) her entire medical file; or (3) her
entire medical file plus her characterizations during litigation
of her medical condition during the time she was employed by
defendant.  Although defendant will show that plaintiff fails to
provide any evidence to of a disability even considering the
broadest of these categories, case law from the Ninth Circuit and
elsewhere requires the court to consider only the narrowest.

An employer's duty to accommodate and to avoid
discrimination is triggered only if the employer knows of the
disability.  The ADA imposes an affirmative duty on employers to
provide "reasonable accommodations to the <u>known</u> physical or
mental limitations" of their employees.  42 U.S.C. §
12112(b)(5)(A) (emphasis added).  <u>See also</u> 29 C.F.R. Part 1630
App., § 1630.9.; <u>Maes v. Henderson</u>, 33 F.Supp. 2d 1281, 1289 (D.
Nev. 1999) ("an employer would not be expected to accommodate
disabilities of which it is unaware").  Accordingly, the court

_____

[2]  It is undisputed that plaintiff's supervisor repeatedly
sought medical documentation from plaintiff – indeed, plaintiff
herself stresses the frequency of the requests.  It is undisputed
that it took plaintiff several months and several tries to
provide more than the requested information.  It is also
undisputed that the only documentation she provided about her
prognosis and restrictions was contained in Defendant's Exhibits
A through C.  Plaintiff's contention that she also provided
"medical certifications" is apparently a reference to the forms
she sometimes attached to her leave slips to justify her use of
sick leave, on which form her doctor would check off the
"incapacitated" box.  The forms, contained in Plaintiff's Exhibit
MM, do not contain information on her restrictions or prognosis.

-6-

should restrict its inquiry to the information plaintiff gave to her supervisor, i.e., Defendant's Exhibits A through C.

The court should also decline to consider plaintiff's own characterizations of her limitations, to the extent those characterizations are inconsistent with the medical record.   The Ninth Circuit has rejected the attempts of an employee to assert limitations or capabilities beyond those endorsed by his doctors. In Allen v. Pacific Bell, 348 F.3d 1113, 1115 (9th Cir. 2003), the court upheld the grant of summary judgment to an employer who relied on the evaluation provided by the employee's doctor, not by the contradictory assessment from the employee himself, as to the employee's abilities to perform his job. "Because Allen was requested, but failed, to submit additional medical evidence that would serve to modify his doctor's prior report, Pacific Bell's determination that he was qualified only for desk work was appropriate." Id.  Accordingly, in determining whether plaintiff was disabled, the court should look only at the information available to the employer during the course of her employment.[3]

---

[3]  Another route to the same result is via the Rules of Evidence.  Plaintiff is not a doctor, and so is not competent under Rule 701 to testify as to at least two of the three factors listed in 29 C.F.R. § 1630.2(j) to determine whether a major life activity is substantially limited: "(ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

B.   <u>Plaintiff Fails to Show a Disability Under</u>

Even the Broadest Consideration of Evidence.

For the sake of argument, however, defendant will demonstrate below that even taking the broadest view of the evidence, plaintiff fails to demonstrate that she is disabled in either walking or working.

1.   <u>Walking</u>

As plaintiff acknowledges, she must show either that she is "unable to perform a major life activity that the average person in the general population could perform" or that she is "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity" as compared to an average person in the general population.  The only documentation from her doctors about her prognosis and restrictions plaintiff had provided about her limitations by the time of her retirement stated only that she should not walk more than 20 or 30 minutes without rest and avoid climbing ladders, that her prognosis was "fair" and that she was making progress. Def. Ex. C.  None of the information provided stated that she required crutches, or indicated that her foot problems would affect her ability to walk over the long term.

Accordingly, based on the information it had available to it at the time of plaintiff's retirement, defendant had no reason to

believe that plaintiff was substantially limited in walking.[4]
Defendant therefore had no duty under the ADA either to
accommodate her impairment or to protect her from comments,
teasing, or even harassment.

Even if the court expands its view to all of plaintiff's

---

[4] Plaintiff makes not attempt to distinguish the authority
cited at 10-11 of defendant's Opening Brief for the proposition
that even a person whose ability to walk is permanently limited
to 20 or 30 minutes is not disabled. Other cases supporting the
proposition that a minor to moderate restriction on the ability
to walk, even if supported by expert opinion and found to be
permanent, does not constitute a disability, include Penny v.
United Parcel Service, 128 F.3d 408, 415 (6th Cir. 1997) (walking
with "moderate difficulty or pain ... does not rise to the level
of a disability"); Brower v. Continental Airlines, Inc., 62 F.
Supp.2d 896, 902-03 (E.D.N.Y. 1999) (expert's report stating that
the plaintiff's foot bunions prevented "any extended walking or
standing" showed the plaintiff experienced difficulty with
walking but did not prove she was "disabled" under the ADA);
Miller v. Airborne Express, 1999 WL 47242, at *5 (N.D. Tex. Jan.
22, 1999) (following knee injury and surgery, the plaintiff was
not substantially limited in his ability to stand though he
preferred to lean on a rail and could stand only thirty minutes
without resting); Bochenek v. Walgreen Co., 18 F.Supp.2d 965, 970
(N.D. Ind. 1998) (knee problems after replacement surgery that
caused numbness with prolonged sitting, that restricted walking
to a few blocks without resting and that resulted in occasional
pain did not constitute a substantial limitation on the activity
of walking); Ingles v. Neiman Marcus Group, 974 F.Supp. at 1002
(S.D. Tex. 1997) (plaintiff was not disabled from walking despite
numerous surgeries on both feet, the need to wear special types
of footwear, and a restriction against extensive walking on hard
surfaces); Graver v. National Eng'g Co., No. 94-C-1228, 1995 WL
443944, at *9-11 (N.D.Ill. 1995) (though he walked with a
pronounced limp because of pain and stiffness in his ankles, the
plaintiff was not significantly restricted in his ability to
walk, care for himself, or work); Richardson v. William Powell
Co., 1994 WL 760695, at *3, *7 (S.D. Ohio 1994) (degenerative
arthritis in hip caused plaintiff to limp and to struggle
climbing stairs, but it did not interfere with a major life
activity).

medical records, those records show that her doctors did not find

her impairments to be serious.  Plaintiff's Exhibit G indicates

that plaintiff saw Dr. Chun eleven times for her foot condition

between January 10, 2000 and March 19, 2001.  The notes indicate

that even during this period plaintiff was able to walk at least

intermittently.  <u>See e.g.</u> March 13, 2000 note ("she has been

doing more walking than usual").  Although Dr. Chun noted twice

in the subjective portions of his notes that plaintiff was using

crutches (on January 24, 2000 and March 19, 2001), he never found

crutches to be necessary in his objective notes, his assessment

or his plan.  Indeed, his plan, repeatedly set forth in his

notes, called for her to wear supportive shoes, to soak her foot,

and to do stretching exercises.  At no point did Dr. Chun ever

place any limits on her activities or state that her use of

crutches was required.[5]

Dr. Chun's final note, from March 19, 2001, indicates that

she will "continue with Dr. Portner."  Dr. Portner's notes (or

those from his colleague Dr. Kosuri), Exhibit II, are similar.

His March 10 typed note indicates that plaintiff was able to

walk, since he wrote that "prolonged standing and walking

---

[5]  The notes do not support plaintiff's contention that Dr.
Chun told her to take a month off of work.  Without a declaration
or at least notes from Dr. Chun on this point, plaintiff's
assertion that Dr. Chun told her that a month off of work was
medically required is inadmissible hearsay.  The same goes for
any other statement from plaintiff about her medical
restrictions, diagnosis or prognosis.

activities aggravates this pain." By July she reported that was able to walk 15 minutes without crutches, By August she said she was feeling well, that she could walk for twenty minutes without crutches, and that she was 70% improved. By October she reported she was using the crutches "primarily for long-distance walking." Like Dr. Chun, Dr. Portner never found her use of crutches to be necessary, he placed no restrictions on her activities other than keeping her from walking more than 20 or 30 minutes without a rest and from climbing ladders. Def. Ex. C.

Plaintiff also apparently saw a Dr. Hagen for her foot problem. To the extent his notes can be deciphered, they appear to state that she needed crutches for "guarding" rather than for pain (October 30, 2000 note); that she could walk without crutches "with good results" once she developed confidence (November 2, 2000 note), and that she was "quite a bit more comfortable" walking over a trial period of 20 minutes (November 17, 2000 note). Pl. Ex. DD.

Applying the relevant law to these facts, it is clear that plaintiff was not disabled. Taken in the light most favorable to her, as of August 2001 she had a foot impairment painful enough that she felt she needed crutches for walking more than twenty minutes. The impairment had been present in one form or another since December 1999, but had fluctuated in its impact on her ability to walk from making her entirely dependent on crutches at

some points and allowing her to walk unaided at others.  There is
no competent medical evidence that the crutches were medically
necessary, that her impairment would be of permanent or long-term
duration, or that she would be restricted in walking or in
pursuing any other activity for any significant period of time.
Without such evidence, plaintiff simply cannot show that she was
disabled.  Accordingly, defendant is entitled to summary judgment
on plaintiff's claim that her ability to walk was substantially
limited.

>        2.   Working

Plaintiff contends that she was restricted in her ability to
work, apparently on the basis that her walking restrictions
caused her employer to modify her job duties, and that her
migraine headaches and other problems caused her to call in sick.

To be substantially limited in "working," an individual must
be significantly restricted in the ability to perform either a
class of jobs or a broad range of jobs in various classes as
compared to the average person having comparable training, skills
and abilities.  Plaintiff must provide some evidence of the
geographical area to which the individual has reasonable access,
and the "number and type of jobs utilizing similar training,
knowledge, skills or abilities, within that geographical area,
from which the individual is also disqualified."  29 C.F.R. §
1630.2(j)(3)(ii)(A),(B).  The inability to perform a single,

particular job does not constitute a substantial limitation in
the major life activity of working.  29 C.F.R. § 1630.2(j)(3)(I).
Moreover, the inability to perform occupation-specific tasks does
not equate to an inability to perform the central functions of
daily life.  See e.g. Toyota Motor Mfg., Kentucky, Inc. v.
Williams, 534 U.S. 184 (2002).  To withstand summary judgment,
plaintiff must "point to evidence which showed that her
restriction precluded her from engaging in an entire class of
jobs."  Broussard v. University of California, 192 F.3d 1252,
1257 (9th Cir. 1999) (citing Sutton v. United Air Lines Inc., 527
U.S. 471, 492 (1999)).

     Here, plaintiff has provided no evidence she was limited
from working her own job or an entire class of jobs because of
her claimed physical limitations.  In addition, no reasonable
inference that she was substantially limited in her ability to
work could possibly be drawn from her allegations that she had to
take off work due to migraines, ulcers, gastrointestinal
problems, foot problems, tension, anxiety, stress and insomnia,
since she was able to work the great majority of the time.

     Plaintiff contends that the fact that her employer modified
her work duties was a recognition that she was disabled. The
Ninth Circuit has rejected this proposition.  "[W]hen an employer
takes steps to accommodate an employee's restrictions, it is not
thereby conceding that the employee is disabled under the ADA or

-13-

that it regards the employee as disabled."    Thornton v.
McClatchy Newspapers, Inc., 261 F.3d 789, 798 (9th Cir. 2001).

III.  PLAINTIFF WAS NOT PERCEIVED AS DISABLED

Plaintiff contends that she meets the definition of
"disabled" because she was regarded as being substantially
limited in her ability to work.  42 U.S.C. § 12102(2)(c).  To
meet this standard, she must show that although her impairment
does not substantially limit her in any major life activity, her
employer treated or regarded her as being so limited.  "As with
real impairments . . . perceived impairment must be substantially
limiting and significant."  Thompson v. Holy Family Hosp., 121
F.3d 537, 541 (9th Cir. 1997).

Here, there is no evidence that plaintiff's supervisors
viewed her as substantially impaired in a major life activity.
Instead, the evidence shows that her supervisors viewed her
accurately.  Plaintiff's recitation of Mr. Ching's perceptions of
her abilities does no more than establish that he saw her using
crutches, that he adjusted her assignments accordingly, and that
as time passed and her work limitations and frequent absences
persisted, he sought medical documentation to explain her time
off.

There is no evidence, however, that Mr. Ching or anyone else
viewed plaintiff as substantially limited in a major life
activity.  Accordingly, plaintiff will be unable to show that she
is disabled based on the "perceived as disabled" standard.

IV.  PLAINTIFF HAS FAILED TO SHOW AN ADVERSE PERSONNEL ACTION.

-14-

Plaintiff contends that her employer's requirement that she justify her sick leave was an adverse personnel action.  She makes no showing that the requirement in any way changed her hours, pay or other terms and conditions of her employment.  She does not address defendant's showing that the FMLA explicitly permits such a request.  Plaintiff does contend that the Letter of Requirement conflicts with the collective bargaining agreement.  Pl. Memo at 25-26; <u>see also</u> Plaintiff's Concise Statement of Facts in Opposition, Para. 3.  She cites only testimony from the administrative proceeding on this point, her Ex. P, at 127:12-18).  She does not provide this page in her Exhibits, however, nor does she cite the collective bargaining agreement itself, her Exhibit GG.  Exhibit GG contains only the odd-numbered pages of the agreement, omitting page 8, which contains the sick leave provisions.

To make clear up any possible confusion on this point, defendant attaches as Exhibit H page 8 of the agreement.  Article XI.2.B allows the employer to require "a doctor's certificate for <u>each absence</u> on sick leave .... if there is an established pattern of absences which indicate sick leave abuse."  Emphasis added.

V.    PLAINTIFF WAS NOT SUBJECTED TO A HOSTILE WORK
      <u>ENVIRONMENT.</u>

A.   Most of the Actions Alleged to Be Harassment
     Were Perfectly Appropriate.

As set forth in Defendant's Opening Brief (at 13), for her
constructive discharge claim to survive summary judgment,
plaintiff must establish that severe and pervasive acts of
harassment not only changed the terms and conditions of her
employment, but made her work conditions objectively and
subjectively intolerable.  Plaintiff's affidavit recites a long
list of actions that plaintiff found distressing, including: her
significant disagreements with her second-line supervisor Chief
Domdoma (Paras 8, 30); her supervisor's requests for medical
information and return to work dates (Paras 10-12, 14, 18, 21,
33); the denial of permission to attend a preretirement seminar
(Paras. 23-25); and the Letter of Requirement, she attributes her
retirement to the stress arising from all these incidents.  Para.
35.

Plaintiff's Memorandum, however, apparently recognizes that
these allegations simply do not constitute acts of harassment
arising from plaintiff's impairment.  The Memorandum limits its
argument to statements made by plaintiff's supervisor Mr. Ching
regarding her impairment.  Thus plaintiff contends in her
affidavit that her supervisor "on a weekly basis" from January
2000 through October 2001 would say "just cut your leg off
already" (Para. 29).  Her contention in her Memorandum (at 28)
that this occurred "daily" is not supported in the record, nor is

-16-

the contention that he made "many other degrading remarks."  The citations to the record in her Concise Statement establish only that three coworkers overheard the "cut your leg off" statement on a few occasions (the claim that Mr. Yanagi heard the statement is not accurate).  Plaintiff characterizes the supervisor's tone as "sarcastic."  Pl. Ex. EE, at 7.

Accepting plaintiff's sworn description of events as accurate for the purposes of summary judgment, plaintiff fails to meet either the objective or the subjective standards for establishing a hostile work environment, much less the standards for constructive discharge.

B.    Objective Standard.

Sarcastic comments, no matter how frequent, fall far short of the sort of extreme conduct necessary to establish an objectively hostile work environment.  Title VII is not "a general civility code for the American workplace".  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  There is no contention that there were threats, physical humiliation, or anything other than the "mere offensive utterances" often found to be insufficient to create a hostile work environment.  See e.g. Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000) (no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in plaintiff's presence; the supervisor called

-17-

the plaintiff "Medea"; the plaintiff complained about other
difficulties with that supervisor; and the plaintiff received
letters at home from the supervisor); <u>Sanchez v. City of Santa
Ana</u>, 936 F.2d 1027 (9th Cir. 1990) (no hostile work environment
despite allegations that the employer posted a racially offensive
cartoon, made racially offensive slurs, targeted Latinos when
enforcing rules, provided unsafe vehicles to Latinos, did not
provide adequate police backup to Latino officers, and kept
illegal personnel files on plaintiffs because they were Latino).

Because a reasonable person would not have found that weekly
sarcastic comments from a supervisor to be so severe or extreme
that they would compel a reasonable employee to retire, defendant
is entitled to summary judgment on plaintiff's constructive
discharge claim.

C.    <u>Subjective Standard</u>.

Plaintiff contends in her brief that the "workplace
harassment" in the form of Mr. Ching's comments forced her to
retire.  The actual evidence, including her own declaration,
tells a very different story.

As noted above, her September 25, 2001 letter to Congressman
Abercrombie, a week before she retired, complains about her
employer's refusal to allow her to attend a preretirement
seminar, and general workplace problems, but not about
harassment.  Pl. Ex. U.  On October 26, 2001, she told the Hawaii

-18-

Unemployment Insurance Division that she was retiring due to "ongoing health problems" and "the stress level of my job." She described the stress as being caused by her heavy workload, not by harassment. Pl. Ex. X. At a December 12, 2001 hearing on her application for unemployment benefits, she complained about the preretirement seminar and the Letter of Requirement, but not about harassment. Pl. Ex. Y., at 1-2.

Plaintiff contends that her psychologist, Dr. Bernstein, told her to retire due to harassment. This is not supported in the record. Plaintiff does not supply a declaration from Dr. Bernstein. To the extent Dr. Bernstein's notes (Pl. Ex. R) are legible, they simply state that he recommended retirement because she "is under significant stress" without identifying the cause of that stress. In a note dated September 21, 2001, just a week before her retirement, Dr. Bernstein notes that she feels "harassed," but attributes this to the Letter of Requirement: "Feels unable to perform properly at work since placed on absence control." Again, the notes do not contain any reference to her supervisors' sarcastic comments.

Even in this litigation, plaintiff does not state that the comments caused her retirement. Instead, after reciting a multitude of disputes with management during her entire work history, set forth above, she blames her retirement on stress arising from all these conflicts. Accordingly, because there is

no evidence in the record to show that her supervisor's comments were the subjective cause of plaintiff's retirement, defendant is entitled to summary judgment on her constructive discharge claim.

VI.  PLAINTIFF FAILS TO SHOW THAT SHE SUFFERED ANY HARM OR DAMAGES DUE TO THE ALLEGED MISCHARACTERIZATION OF HER LEAVE.

Plaintiff does not dispute that she must show some injury or harm to maintain a claim under the FMLA.  The only harm she can identify is that "if Defendant had credited Plaintiff with unpaid FMLA leave it would not have issued her the Letter of Requirement." Pl. Memo at 29.[6]  Since (as defendant pointed out in its Opening Brief at 11), the FMLA explicitly authorizes the employer to seek medical information, 29 U.S.C. § 2613(a), the employer's exercise of this right could not be an actionable harm under the same statute.[7]  Accordingly, defendant cannot maintain

_____

[6] She cites no authority to support this assertion, and it is in fact directly contradicted by the record.  It is undisputed that plaintiff's supervisor began looking into plaintiff's leave balance in March 2001 because her leave balance was at or near zero, and that he issued the letter of requirement only after she was unable to provide adequate information about her condition and prognosis.  Def. Concise Statement Para 5.  The Letter of Requirement itself, Def. Ex. D also contradicts plaintiff's assertion.  The letter notes that plaintiff she has an annual leave balance of nine hours and a sick leave balance of zero hours, and that she would be taking 40 additional hours of leave soon.  This would reduce her annual leave balance to negative 31 hours, so no matter how her 16.5 hours of annual leave that she was taking due to her father's death was classified, her leave balance would have been below zero.

[7] Plaintiff contends in Exhibit N that she took only 56 hours of sick leave in 2001.  Her own Exhibit MM her leave slips,

a claim under the FMLA.

                                CONCLUSION

        For the foregoing reasons, the court should dismiss or grant

summary judgment to defendant on all of plaintiff's claims.

        DATED: March 3, 2006, at Honolulu, Hawaii.

                                EDWARD H. KUBO, JR.
                                United States Attorney
                                District of Hawaii


                                  /s/ Thomas A. Helper
                                By_____
                                  THOMAS A. HELPER
                                  Assistant U.S. Attorney

                                Attorneys for Defendant

_____

contradicts this.  Considering only the 2001 leave slips for more
than eight hours, she took 32 hours ending February 2, 16 hours
ending February 23, 17 hours ending February 28, 32 hours ending
March 30, 32 hours ending April 27, 17 hours ending May 24, 32
hours ending August 17, 90 hours ending September 26, and 16
hours ending September 28 – a total of 274 hours.  The correct
figures are set forth in Para. 12 of Defendant's Concise
Statement, which plaintiff does not deny.

                                  -21-

<u>CERTIFICATION RE: WORD COUNT</u>

Pursuant to Local Rule 7.5(c), I hereby certify that Reply Memorandum in Support of Defendant Donald H. Rumsfeld's Motion to Dismiss, for Summary Judgment and in the Alternative to Strike Jury Demand on Plaintiff's Family and Medical Leave Act Claim has a word count of 5,024 words.

I certify under the penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2006.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


 /s/ Thomas A. Helper
By _____
   THOMAS A. HELPER
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served by First-Class Mail

Venetia K. Carpenter-Asui, Esq.    March 3, 2006
Haseko Center
820 Mililani Street, Suite 812
Honolulu, HI 96813

Attorney for Plaintiff
Linda D. Sekiya

DATED: March 3, 2006, at Honolulu, Hawaii.


/s/ Myra Peterson
_____