IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LINDA D. SEKIYA, | ) | CV NO 04-00297DAE/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DONALD H. RUMSFELD, | ) | |
| Secretary, Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, FOR
SUMMARY JUDGMENT, AND IN THE ALTERNATIVE TO STRIKE JURY
DEMAND ON PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIM

The Court heard Defendant's Motion on March 14, 2006. Venetia

Carpenter-Asui, Esq., appeared at the hearing on behalf of Plaintiff; Thomas

Helper, Assistant United States Attorney, appeared at the hearing on behalf of

Defendant. After reviewing the motion and the supporting and opposing

memoranda, the Court GRANTS Defendant's Motion to Dismiss, for Summary

Judgment and in the Alternative to Strike Jury Demand on Plaintiff's Family and

Medical Leave Act Claim.

## BACKGROUND

Plaintiff was employed as a Property Disposal Technician by the Defense Reutilization and Marketing Office of the Defense Logistics Agency from 1975 until she retired on October 1, 2001. Plaintiff was supervised by Godfrey Ching.

As with all employees, Plaintiff accrued both sick leave and annual leave and Plaintiff could request an advance of either sick or annual leave up to the amount that she would accrue through the end of the year. Pursuant to a union agreement that covered Plaintiff, Plaintiff was not required to provide a doctor's note for absences due to illness unless the absence exceeded three days. (Def.'s Reply at Ex. H.) However, the agreement also provided that where there is a pattern of absences which indicates sick leave abuse, Defendant can require the employee to furnish a doctor's note for each sick leave absence. (Id.)

In December 1999, Plaintiff began experiencing problems with her right foot, which Plaintiff claims was due to a bone spur and plantar fasciitis. From December 1999 to April 2003, Plaintiff used crutches to walk. Mr. Ching was aware that Plaintiff experienced problems with her right foot and he reassigned some of her duties to co-workers, such as climbing ladders and packaging heavy materials. Plaintiff did not complain about problems performing her remaining

2

duties.  Mr. Ching admits that several months after Plaintiff began having problems with her foot and using crutches, he joked to her on numerous occasions that she should "just cut off her leg already."  (Pl.'s CSF at Ex. P.)[1]

In December 2000, Plaintiff informed Mr. Ching that her father was ill.  In March 2001, Mr. Ching learned that Plaintiff's father had passed away. During this period of time, Plaintiff took 151 hours of approved sick leave and 16.5 hours of approved annual leave.  In March 2001, Mr. Ching realized that Plaintiff and another employee had little, if any, sick leave remaining.  In late May 2001, Mr. Ching asked both employees to provide medical explanations for their sick leave absences, which would include a description of the condition, any restrictions on their ability to perform their work, and the expected recovery time or prognosis.  The other employee complied with this request.

In June  2001, Plaintiff requested 2.15 hours of sick leave.  Plaintiff attached to this request a doctor's note which stated that Plaintiff was under the

---

[1]Plaintiff attached excerpts from the transcript of hearing in front of the Merit Systems Protection Board.  Although it is unclear who is testifying on the page cited by Plaintiff, Defendant does not dispute that Mr. Ching made such statements or that he admitted to making such statements.  However, Plaintiff's claim that Mr. Ching also told her to get a wooden leg, asked her to use a cane, asked her to take medical retirement and asked her to take regular retirement are not supported by the record, either because Plaintiff did not attach the correct transcript page or because the testimony was not as Plaintiff summarized it.

doctor's care for "chronic foot pain due to plantar fasciitis. She is making

progress. She needs to continue some more physical therapy sessions . . . ."

(Def.'s Concise Statement of facts ("CSF") at Ex. A.) Mr. Ching told Plaintiff that

the note was insufficient because it did not explain her absences or give a

prognosis. Over the next several weeks, Mr. Ching reminded Plaintiff that she

needed to provide doctor's notes.

　　　　In July 2001, Plaintiff provided Mr. Ching with a doctor's note, dated

July 26, 2001, which stated that Plaintiff

> has had several episodes of illness within a relative short
> time span. I have seen her for upper respiratory illness,
> gastrointestinal problems and tension headache. . . . In
> general, she is in satisfactory health. I do not anticipate
> any deterioration in her health or prolonged disability.
> She continues to be able to work without restriction. I do
> not have any recommendations for treatment at this time.

(Id. at Ex. B.)

　　　　On August 10, 2001, Mr. Ching told Plaintiff that he would be issuing

her a Letter of Requirement, which would require her to submit doctor's notes

justifying sick leave, obtain permission before using annual leave, and inform him

of any absence within the first hour of the absence. Defendant claims that this was

necessary since Plaintiff had not produced satisfactory medical explanations of her

4

condition to justify use of sick leave.  Plaintiff contends the reason for the letter was due to her low remaining amount of sick leave.

Plaintiff took four days of sick leave and one day of annual leave for the period of August 13 to 17, 2001.  On August 20, 2001, Plaintiff provided a doctor's note which indicates that she should be off work from August 11 to August 12, but does not cover August 13th through 17th.  (Id. at Ex. C.)  The note also states that Plaintiff is advised not to walk more than 20 to 30 minutes without a rest break and she is to avoid climbing ladders.  (Id.)

On August 22, 2001, Mr. Ching issued the Letter of Requirement to Plaintiff.  The Letter stated that "[i]t appears that your use of leave is excessive and may possibly be abuse.  Your current leave balance is 9 hours of annual leave (AL) and zero hours of sick leave (SL).  You have used 56 hours of SL and 145.25 of AL since the beginning of the leave year through August 11, 2001.  You were also absent due to a recurring medical problem for the week of August 13-17, 2001.  This will exhaust your remaining AL and result in leave without pay (LWOP[)] for the remaining hours."  (Id. at Ex. D.)  The Letter further states that although Plaintiff's unscheduled annual leave was approved in the past, she will now be required to submit a medical certificate stating the nature and duration of the illness for each sick leave absence, obtain permission before using annual leave,

and inform Mr. Ching of any absence within the first hour of the absence. (Id.)
The requirements would be in place for three months, at which time they would be
reviewed. (Id.) The Letter further stated that it was being issued to monitor
Plaintiff's leave usage. Finally, the Letter stated that "[f]ailure to provide me with
information requested in the appropriate manner described above will result in you
being placed in AWOL status and could result in appropriate disciplinary action."
(Id.)

On August 31, 2001, Plaintiff gave notice that she planned to retire on
October 1, 2001. Plaintiff turned 55 years old on September 27, 2001, and this
date was when she first became eligible for retirement with full benefits.

On July 27, 2004, Plaintiff filed a First Amended Complaint alleging
that Defendant discriminated against her based upon her alleged disability and as a
result of hostile work environment she was constructively discharged from her
employment. In addition, Plaintiff alleges that Defendant failed to inform her that
she was eligible for leave under the Family Medical Leave Act ("FMLA").
Plaintiff did not bring a claim for failure to accommodate her alleged disability.
Indeed, at the hearing, Plaintiff conceded that Defendant bent over backwards in
accommodating her. On December 12, 2005, Defendant filed the instant motion.

Plaintiff filed her opposition on February 21, 2006, and Defendant filed a reply on March 3, 2006.

STANDARD OF REVIEW

Defendant seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Since this Court has considered matters outside the pleadings, Defendant's motion is treated as one for summary judgment.  See Keas v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Anemone, 86 F.3d 932, 934 (9th Cir. 1996).

> Rule 56 requires summary judgment to be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c)); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at

7

323.  A moving party without the ultimate burden of persuasion at trial–-usually, but not always, the defendant–-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party does not meet its burden by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at

8

630 (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  <u>Addisu</u>, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

<u>DISCUSSION</u>

Defendant argues that Plaintiff's disability claim should be dismissed because she failed to contact an Equal Employment Opportunity ("EEO") counselor within 45 days of the alleged discriminatory acts.  Defendant also argues that Plaintiff's disability claim should be dismissed because she is not disabled, as

9

defined by the Americans with Disabilities Act, and even if she were, she did not

suffer an adverse employment action.  In addition, Defendant asserts that Plaintiff

was not subjected to a hostile work environment and therefore her constructive

discharge claim fails.  Finally, Defendant seeks dismissal of Plaintiff's Family

Medical Leave Act ("FMLA") claim because she did not have a serious medical

condition as defined under the FMLA and she did not suffer any prejudice or harm.

I.     Disability Claim

           Pursuant to the Rehabilitation Act, government agencies are required

to make a reasonable accommodation for an employee's disability and not to

discriminate against an individual because of their disability.  The standards of the

Americans with Disabilities Act ("ADA") apply in determining whether there has

been a violation of the Rehabilitation Act.  29 U.S.C. § 791(g); Newland v. Dalton,

81 F.3d 904, 906 (9th Cir. 1996).

           In order to establish a claim of disability discrimination, the plaintiff

must prove that (1) she is disabled, (2) she is qualified to perform the essential

functions of her job with or without a reasonable accommodation, (3) she suffered

an adverse employment action and (4) the action was motivated by the employer's

discriminatory animus based upon the plaintiff's disability.  Head v. Glacier

Northwest Inc., 413 F.3d 1053, 1065 (9th Cir. 2005); Humphrey v. Memorial

Hosps. Ass'n, 239 F.3d 1128, 1133 (9th Cir. 2001) ("to prevail on a claim of unlawful discharge under the ADA, the plaintiff must establish that he is a qualified individual with a disability and that the employer terminated him because of his disability."); Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154, 1156- 57 (9th Cir. 2000).

Plaintiff alleges that she was discriminated against because Defendant issued her the Letter of Requirement and because she was constructively discharged. Defendant argues that Plaintiff's disability claim should be dismissed because she cannot establish that she suffered an adverse employment action.

The Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996); Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks and citation omitted). However, not every employment decision amounts to an adverse employment action. Ray, 217 F.3d at 1240. Instead, an adverse employment action is one that

11

"causes a material employment disadvantage, such as a tangible change in duties,

working conditions or pay."  Hutchinson v. Seagate Tech., LLC, No. C 02-05763,

2004 WL 1753391, at *8  (N.D. Cal. Aug. 3, 2004) (citation omitted).

Specifically, the Ninth Circuit has found that actions such as

transferring job duties, issuing undeserved performance ratings, or actions that

negatively affect the employee's compensation are adverse employment actions.

Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d 13741, 1376 (9th Cir.

1987).  The Ninth Circuit has also found that being excluded from meetings,

seminars, and positions that would have made the employee eligible for salary

increases, and being given a more burdensome work schedule, if proven, were

sufficient to establish adverse employment actions.  Strother, 79 F.3d at 869.

Plaintiff claims that the Letter of Requirement is an adverse

employment action because it required her to submit a medical certificate for each

sick leave absence, that routine medical appointments be made in advance of any

absence and have medical certification, both of which Plaintiff alleges were

contrary to the agreement with the union, and because it stated that failure to

comply would place her on absence without leave and could result in disciplinary

action.

Plaintiff's claim fails.  First, requiring Plaintiff to provide medical certification for any sick leave, rather than only for sick leave that is three days or longer, does not conflict with the agreement with the union, as Plaintiff argues. Instead, the agreement clearly states that

> Employees will not be required to furnish a doctor's certificate to substantiate a request for sick leave for a period of three (3) consecutive day or less unless the Employer has given written notice to an employee that for a stated period, not to exceed six (6) months, he must furnish doctor's certificate for each absence on sick leave.  It is agreed that written notice will not be given to an employee unless there is an established pattern of absences which indicates sick leave abuse.

(Def.'s Reply at Ex. H.)  Plaintiff does not dispute that at the time the Letter of Requirement was issued, her sick leave balance was at or near zero.  Neither does Plaintiff dispute that prior to the issuance of the Letter of Requirement, she was asked to provide doctor's notes that excused her for her absences.  In addition, Plaintiff does not dispute that despite her employer's request, the doctor's notes that she provided did not excuse her for all the days that she was absent. Accordingly, there is no question that issuing the Letter of Requirement complied with the union agreement.

Moreover, Plaintiff presented no evidence that being issued the Letter of Requirement had any negative impact on her compensation, hours, status, or

other terms of employment.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912,

919 (9th Cir. 1997) (holding that transfer with no reduction in compensation did not

constitute an adverse employment action).  Indeed, Plaintiff does not even allege

that she failed to comply with the Letter of Requirement or that she suffered any

disciplinary action after or because of the issuance of the Letter of Requirement.

        Therefore, Plaintiff has presented no evidence or even allegation that

would support a finding that the Letter of Requirement was an adverse

employment action.  Lynch v. U.S. Postal Serv., No. 00-3899, 2001 WL 92132, at

*2 (6th Cir. Jan. 26, 2001) (unpublished opinion) (finding that "being required to

submit medical certifications, the delay in processing her worker's compensation

claim, the denial of leave which she had not earned, being charged for being late to

work, and receiving a since rescinded notice of removal based on absenteeism"

were not adverse employment actions as none of them materially changed the

terms of the plaintiff's employment).[2]

_____

        [2]This Court cites this case for illustrative purposes only. The Sixth Circuit's
Federal Rule of Appellate Procedure 28(g) provides that "[c]itation of unpublished
decisions in briefs and oral arguments in this Court and in the district courts within
this Circuit is disfavored, . . . . If a party believes, nevertheless, that an unpublished
disposition has precedential value in relation to a material issue in a case, and that
there is no published opinion that would serve as well, such decision may be cited .
. . ."  This rule does not prevent this Court from citing to an unpublished opinion in
this district, especially when used for illustrative purposes only.

14

Similarly, Plaintiff cannot establish that she was constructively discharged.  To prove a constructive discharge claim, a plaintiff must show that their working environment was "so intolerable and discriminatory" that a reasonable employee would be compelled to quit.  Watson v. Nationwide Ins., Co., 823 F.2d 360, 361 (9th Cir. 1987).  The standard to prove a constructive discharge claim is higher than that required to prove a hostile work environment claim. Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) ("[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.").

Here, Plaintiff cannot establish constructive discharge as she cannot even establish a hostile work environment claim.[3]  In order to prevail on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to verbal or physical conduct of a harassing nature (2) that this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the

---

[3] This Court is not holding that a hostile work environment claim exists under the ADA.  Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide whether a hostile work environment claim exists under the ADA).

15

conditions of his employment and create an abusive working environment.  Manatt
v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003); see also Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21 (1993).  The working environment must be both objectively
and subjectively offensive.  Faragher v. City of Boca Raton, 524 U.S. 775, 787
(1998).  To determine whether an environment is objectively hostile, the court
must consider the totality of the circumstances, including the "frequency of the
discriminatory conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance."  Id. at 787-88 (quotation marks and
citation omitted).  The purpose in requiring a sufficiently demanding standard is to
ensure that Title VII does not become a "general civility code."  Id. at 788.  The
Supreme Court has made it clear that the alleged harassing conduct must be
extreme to amount to a change in the terms of employment.  Id.  Proper application
of the standard will filter out complaints based upon the ordinary trials and
tribulations of the workplace.  Id.

Here, Plaintiff bases her claim upon her supervisor's comments that
she should "cut off her leg already."  The evidence shows that this comment was
made at most 12 to 24 times over a period of almost  two years.  Defendant alleges
that Plaintiff first made the comment and that her supervisor repeated it to her as a

16

joke.  Plaintiff does not base her constructive to discharge claim on any other

alleged harassing conduct.  Indeed, Plaintiff admits that Defendant accommodated

her medical problems and did not bring a failure to reasonably accommodate claim.

One comment, which Plaintiff conceded was made with a sarcastic tone, and which

was made at most once a month over a period of two years, does not rise to level

necessary  to support a hostile work environment claim, as it is neither severe or

pervasive.  (Pl.'s CSF at Ex. EE.); Faragher, 524 U.S. at 788 ("'simple teasing,'

offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the 'terms and conditions of employment.'");

Morgan v. City and County of San Francisco, No. C-96-3573-VRW, 1998 WL

30013, at *8 (N.D. Cal. Jan. 13, 1998) (finding that being subjected to insensitive

coworker remarks such as "You don't fit in," poor performance evaluations,

inaccurate reporting of sick leave and having to tell the receptionist when she left

her work station did not rise to the level of a hostile work environment.

"Occasional hurtful remarks by a coworker or supervisor do not reach the

appropriate level of severity."); Meritor Savings Bank v. Vinson, 477 U.S. 57, 67

(1986) (mere utterance of epithet which engenders offensive feelings would not

affect conditions of employment to sufficiently significant degree necessary for

violation of Title VII).  Indeed, the alleged comment made one or two dozen times

over a two-year period is not nearly as severe or pervasive as incidents alleged by other plaintiffs that courts have found did not constitute a hostile work environment.  See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (Ninth Circuit affirmed finding that plaintiffs failed to prove a hostile work environment even where the employer allegedly made racially offensive slurs, kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe vehicles to Latino police officers, posted a racially offensive cartoon, targeted Latinos when enforcing rules, and did not provide adequate back up to Latino police officers); see Vasquez v. County of Los Angeles, 349 F.3d 634, 643-44  (9th Cir. 2003) (finding no hostile environment existed even where the plaintiff was told that he should consider transferring to work in the field because "Hispanics do good in the field," was told that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others);  Mendoza v. Sysco Food Servs. of Ariz., Inc., 337 F. Supp. 2d 1172, 1188, 1190 (D. Ariz. 2004) (holding that no hostile work environment existed despite at least four alleged instances of discrimination based on the plaintiff's Mexican national origin occurring within period of five months involving stereotypical remarks made after employee killed rat, a cartoon depicting rats having sex with deceased rat, supervisor's comments

regarding Mexican employees' unreliability, and co-worker's complaints about

Mexican music station).  As Plaintiff cannot prove a hostile work environment, her

constructive discharge claim fails.

Accordingly, this Court GRANTS Defendant's motion for summary

judgment on Plaintiff's disability claim.[4]

II.    FMLA Claim

Defendant argues Plaintiff's FMLA claim should be dismissed

because even if she did qualify for FMLA, she suffered no harm by not having her

leave be counted as FMLA leave.  Defendant asserts that Plaintiff was granted all

of the leave she requested, which included 117 hours of unpaid leave.  Plaintiff

alleges that she was harmed because had she known about the FMLA, she would

have taken the 16.5 hours that was counted against her paid annual leave as FMLA

leave and she would not have been issued the Letter of Requirement.  Defendant

asserts that Plaintiff's argument has no merit because it could have required

Plaintiff to take the 16.5 hours of leave as both annual leave and FMLA leave and

---

[4] Because this Court has found that Plaintiff has failed to create a genuine issue of fact as to whether she suffered an adverse employment action, this Court need not consider Defendant's arguments regarding timeliness of Plaintiff's EEO complaint and whether she is disabled as defined by the law.

because, the FMLA allows the employer to request medical certification for absences.  The Court agrees.

Under the FMLA, employees have the right to take up to twelve weeks of unpaid leave for certain purposes and have the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave.  Liu v. Amway Corp., 347 F.3d 1125, 1132 (9th Cir. 2003).  The FMLA "simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions."  Id. To prevail on an FMLA claim the employee must prove that they have "been prejudiced by the [FMLA] violation."  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (noting that "[t]he employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' §2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).").

Here, Plaintiff has not suffered any harm that could be remedied by the FMLA.  Pursuant to 29 U.S.C. § 2612(d)(2), "an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for [FMLA] leave."  Thus, Defendant could have

counted the 16.5 hours against both Plaintiff's FMLA leave and her annual leave.
29 C.F.R. § 825.207(a) ("the employer may require the employee to substitute
accrued paid leave for FMLA leave."); Strickland v. Water Works and Sewer Bd.
of City of Birmingham, 239 F.3d 1199, 1205 (11th Cir. 2001) ("an employer who is
subject to the FMLA and also offers a paid sick leave policy has two options when
an employee's leave qualifies both under the FMLA and under the employer's paid
leave policy: the employer may either permit the employee to use his FMLA leave
and paid sick leave sequentially, or the employer may require that the employee
use his FMLA leave entitlement and his paid sick leave concurrently.").

          Furthermore, Plaintiff does not dispute that she was granted all leave
that she requested, which included 117 hours of unpaid leave.  This is not a
situation where Plaintiff suffered harm because she was denied leave or terminated
from employment for taking too much leave.  Moreover, this Court already held
that the Letter of Requirement was not an adverse employment action.  Indeed, the
FMLA allows the employer to request medical certification for absences.  29
U.S.C. § 2613(a) (an employer may require an employee to provide a medical
certification for leave).  Therefore, Plaintiff cannot establish that the issuance of
the Letter of Requirement or the counting of 16.5 hours of leave as annual leave
caused her harm.  Thus, her FMLA claim fails as a matter of law.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss, for Summary Judgment and in the Alternative to Strike Jury Demand on Plaintiff's Family and Medical Leave Act Claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 17, 2006.



_____
David Alan Ezra
United States District Judge

<u>Sekiya v. Rumsfeld</u>, CV No. 04-00297 DAE-KSC;  ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, FOR SUMMARY JUDGMENT AND IN THE ALTERNATIVE TO STRIKE JURY DEMAND ON PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIM